# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R. J. K. TIMON, Minor.

UNPUBLISHED
May 2, 2017

Nos. 333788; 333789
Wayne Circuit Court
Family Division
LC No. 13-512300-NA

Before: O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

The trial court terminated the parental rights of respondent-mother, K. Timon, and respondent-father, M. Timon, to their minor child, RJKT, under MCL 712A.19b(3)(c)(*i*) (the conditions that led to adjudication continue to exist), (g) (parents failed to provide proper care and custody), and (j) (reasonable likelihood that the child will be harmed if returned to the parents). Both respondents appeal as of right the trial court's order terminating their parental rights. We previously consolidated the appeals.[1] We now affirm.

## I. FACTUAL BACKGROUND

Petitioner sought removal of three of respondents' children: MMWT, RDVT, and RJKT. Petitioner claimed that both respondents were habitual drug users and struggled with domestic violence. The trial court authorized the petition on April 10, 2013. The trial court allowed all three children to be placed in the care of their maternal grandmother.

The trial court took jurisdiction in both parents' cases on May 14, 2013. The trial court then ordered both parents to participate in services. But respondents did not complete all of their services. And on January 12, 2016, the trial court decided to change the children's permanency plans.

The trial court changed MMWT and RDVT's permanency plans from reunification to a guardianship and later awarded the maternal grandmother a guardianship over the two boys.

---

[1] *In re RJK Timon Minor*, unpublished order of the Court of Appeals, entered July 20, 2016 (Docket Nos. 333788, 333789).

The trial court ordered petitioner to file a termination petition for RJKT, citing RJKT's age. Petitioner filed a petition, and the trial court held a termination hearing. After the hearing, the trial court concluded that RJKT should not be placed in a guardianship, statutory grounds existed to terminate each respondent's parental rights, and termination of each respondent's parental rights was in RJKT's best interests. Accordingly, the trial court entered an order terminating each respondent's parental rights.

## II. STANDARDS OF REVIEW

We review for clear error the trial court's factual findings, *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), conclusions regarding the statutory grounds for termination, *id.*, and conclusions regarding the child's best interests, *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A finding is "clearly erroneous if [we] ha[ve] a definite and firm conviction that a mistake has been committed." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

## III. STATUTORY GROUNDS

On appeal, both respondents argue that the trial court clearly erred in finding statutory grounds to terminate their parental rights. We disagree.

The trial court must find clear and convincing evidence of at least one statutory ground listed in MCL 712A.19b(3) to terminate parental rights. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).

In this case, the trial court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). Statutory grounds exist to terminate parental rights under subsection (c)(*i*) if

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds [that] . . . :
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. [MCL 712A.19b(3)(c)(*i*).]

Statutory grounds exist to terminate parental rights under subsection (g) if "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). And statutory grounds exist to terminate parental rights under subsection (j) if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j).

## A. RESPONDENT-MOTHER

Respondent-mother argues that the trial court lacked clear and convincing evidence of the forward looking components of all three subsections, evidence that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age" for subsection (c)(*i*), evidence that "there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age" for subsection (g), and evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent" for subsection (j).

Essentially, a parent's failure to comply with and benefit from services targeted to address the conditions that brought the child into care evidence all three forward looking components. More specifically, a trial court has grounds to terminate under subsection (c)(*i*) "when the conditions that brought the child[] into foster care continue to exist despite 'time to make changes and the opportunity to take advantage of a variety of services.' " *In re White*, 303 Mich App at 710, quoting *In re Powers Minors*, 244 Mich App 111, 119; 624 NW2d 472 (2000). This Court evaluates a parent's progress in relation to the time that the child has been out of the parent's care. See *In re Trejo Minors*, 462 Mich 341, 358-360; 612 NW2d 407 (2000). If a parent fails to participate in and benefit from a treatment plan, we will conclude that the parent "will not be able to provide a child proper care and custody" under subsection (g). *In re White*, 303 Mich App at 710. Even if a parent completes some services, we will find grounds to terminate if the parent fails to show sufficient compliance with or benefit from services addressing "the primary basis for the adjudication," such as substance abuse. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Similarly, a "parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home" under subsection (j). *In re White*, 303 Mich App at 711.

In this case, two conditions led to RJKT's removal from respondent-mother's home: substance abuse and domestic violence.

The trial court found that respondent-mother had some compliance with her parent-agency treatment plan. But it noted that "[t]he biggest concern in this case is the substance abuse issues." And the trial court found that respondent-mother had an "inability to stop using drugs" and had not yet completed substance abuse therapy. These findings are not clearly erroneous. Respondent-mother testified that she completed substance abuse therapy in September 2015, but the record indicates that she had multiple positive drug tests after completion. Caseworkers testified that she failed to provide valid prescriptions for the drugs shown on the tests. And the record indicates that respondent-mother enrolled in additional substance abuse treatment.

The record also contains evidence that respondent-mother had yet to rectify domestic violence concerns. She completed a domestic violence class in February 2014. But she and respondent-father had subsequent domestic violence incidents. Testimony at the termination hearing offered conflicting evidence as to whether respondents continued their romantic relationship. The trial court also ordered respondent-mother to complete individual therapy. But the trial court found that she had not done so. This finding was supported by testimony at the termination hearing that respondent-mother was terminated from individual therapy multiple times for noncompliance and began a new class on May 31, 2016. Additionally, RJKT spent

almost half of his life, three years, out of respondent-mother's care from his April 2013 removal until the July 2016 trial court findings.

Therefore, we do not have a definite and firm conviction that the trial court committed a mistake when it found statutory grounds to terminate respondent-mother's parental rights pursuant to MCL 712A.19b(3)(c)(*i*),(g), and (j).

## B. RESPONDENT-FATHER

Respondent-father does not object to the trial court's factual findings in its written order terminating his parental rights. He argues only that a family should be kept together if at all possible, that he at least partially complied with his treatment plan, and, therefore, the trial court clearly erred in concluding that there were statutory grounds to terminate his parental rights.

A "parent's right to control the custody and care of h[is] child[] is not absolute." *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014). "[T]he state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of [a] minor and in some circumstances neglectful parents may be separated from their children." *Id.* at 409-410 (internal quotations and citations omitted). The juvenile code, MCL 712A.1 *et seq.*, outlines a procedure that can be used to terminate parental rights. Once the trial court finds clear and convincing evidence of a statutory ground to terminate parental rights, "a parent's interest in the care and custody of his or her child yields to the state's interest in the protection of the child." *In re Foster*, 285 Mich App 630, 635; 776 NW2d 415 (2009).

In this case, the trial court found in its written order that RJKT was removed "on or about April 10, 2013" and that "illegal substance abuse . . . was one of the main reasons that the child was brought into care." It then ordered respondent-father

> to participate in: 1) individual therapy; 2) substance abuse therapy; 3) domestic violence; 4) anger management; 5) obtain and maintain suitable housing; 6) obtain and maintain a legal source of income; 7) weekly, random screens; 8) parenting time; 9) maintain contact with the worker; 10) psychological evaluations and any follow-up; 11) family therapy; and [12]) attend all court hearings.

The trial court acknowledged that respondent father was participating in a treatment plan but it found that he failed to complete the plan. Specifically, the trial court found that respondent-father failed to complete individual therapy, substance abuse therapy, obtain suitable housing, obtain a legal source of income, and to maintain contact with caseworkers. Additionally, the trial court determined that "the drug component" is "the most crucial component" and found that respondent-father missed 126/154 ordered drug screens and had 20 positive drug screens.

In light of these undisputed factual findings, we do not have a definite and firm conviction that the trial court committed a mistake when it concluded that statutory grounds existed to terminate respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*). 182 or more days had elapsed since the trial court issued an initial dispositional order. The conditions that led to adjudication—substance abuse—continued to exist. Respondent-father had the time and opportunity to participate in services. See *In re White*, 303 Mich App at 710. Because he

failed to do so, there is no reasonable likelihood that the conditions that led to adjudication would be rectified within a reasonable time considering the RJKT's age.

Similarly, we do not have a definite and firm conviction that the trial court committed a mistake when it concluded that statutory grounds existed to terminate respondent-father's parental rights under MCL 712A.19b(3)(g). Respondent-father failed to show sufficient compliance with and benefit from substance abuse therapy and drug screens to address "the primary basis for the adjudication," his substance abuse. See *In re Frey*, 297 Mich App at 248.

We do not have a definite and firm conviction that the trial court committed a mistake when it concluded that statutory grounds existed to terminate respondent-father's parental rights under MCL 712A.19b(3)(j). The trial court found that respondent-father failed to comply with six out of 12 ordered services, evidence that RJKT would be harmed if returned to respondent-father's care. See *In re White*, 303 Mich App at 711. Therefore, respondent-father's interest in the care and custody of RJKT yielded to the state's interest in protecting RJKT. See *In re Foster*, 285 Mich App at 635.

## IV. BEST-INTEREST FINDINGS

The trial court did not clearly err in finding that termination of respondent-mother's parental rights was in RJKT's best interests,[2] and the juvenile code does not require the trial court to consider a guardianship during its best-interest analysis at the termination hearing.

A trial court must terminate a parent's parental rights if it finds by a preponderance of the evidence that termination is in the child's best interests. MCL 712A.19b(5); *In re White*, 303 Mich App at 713. When conducting this analysis, the "trial court should weigh all the evidence available" and can consider many factors. *In re White*, 303 Mich App at 713-714. Factors include the child's bond to the parent, the child's need for permanency, stability, and finality, a parent's compliance with his or her case service plan, *id.*, a child's wishes, see *In re Powers*, 244 Mich App at 120, and "the length of time the child was in care," *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015). If a child is placed with relatives, the trial court must specifically "address whether termination is appropriate in light of the" placement as " 'a child's placement with relatives weighs against termination.' " *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012), quoting *In re Mason*, 486 Mich at 164. The trial court must determine the best interests of the child individually. *In re Olive/Metts*, 297 Mich App at 42.

In this case, the trial court considered these factors as applied to RJKT individually. It found that RJKT had been in care for approximately three years, that respondent-mother had not yet completed her service plan, and that RJKT deserved permanence and stability that

---

[2] Respondent-father claimed in one sentence of his analysis that the trial court lacked evidence to find that termination of his parental rights was in RJKT's best interests. But he failed to set forth this argument in his statement of questions involved or cite supporting authority for his argument, as he is required to do to present an issue on appeal. MCR 7.212(C)(5) and (C)(7).

respondent-mother could not yet provide. Additionally, the trial court noted that respondent-mother still struggled with substance abuse. All of these factors would favor termination. The trial court went on to find that RJKT wanted to return to respondent-mother's care, stating that it did not "doubt that [RJKT] wants to be back with his parents." The trial court also found that RJKT had a bond with respondent-mother, stating that it did not "doubt it for one second that there has been a bond between the child [and] his parents" and "acknowledg[ing] the bond." Additionally, the trial court acknowledged that RJKT was placed with a relative, the maternal grandmother. All of these factors would weigh against termination. When weighing these competing factual findings, we do not have a definite and firm conviction that the trial court made a mistake when it concluded that termination of respondent-mother's parental rights was in RJKT's best interests.

Respondent-mother's guardianship argument does not require reversal. The juvenile code outlines a procedure for the trial court to follow if it chooses to pursue a guardianship *instead of* initiating termination proceedings at a permanency planning hearing. MCL 712A.19a outlines the procedure for the trial court to follow to appoint a guardian for a child *after* parental rights are terminated in MCL 712A.19c. See also MCR 3.979. But the juvenile code does not specifically require or allow the trial court to consider whether a child should be placed in a guardianship instead of finding that termination is in a child's best interests as part of a termination hearing described under MCL 712A.19b.

In this case, the referee ordered petitioner to file a termination petition during a January 12, 2016 permanency planning hearing. In doing so, it stated that a guardianship was "impossible" for RJKT in light of his young age. But respondent-mother does not specifically argue on appeal that the trial court erred when ordering the petitioner to seek termination or erred in initiating termination proceedings, as she is required to do to raise an issue on appeal. See MCR 7.212(C). The trial court considered placing RJKT in a guardianship when making its findings and conclusions following the termination hearing and concluded that it would not order a guardianship.[3] Even if the trial court's analysis was flawed, as respondent-mother argues, the juvenile code did not require the trial court to consider a guardianship at this stage of the termination proceedings. Therefore, we do not find that the trial court's guardianship analysis warranted reversal.

We affirm.

/s/ Peter D. O'Connell
/s/ Mark T. Boonstra

---

[3] The trial court specifically considered a guardianship with the maternal grandmother and expressed doubts about a guardianship's permanence. We note that the maternal grandmother also expressed an interest in adopting RJKT and that the trial court ultimately referred RJKT to the Department of Health and Human Services for "adoption, placement, and planning."